IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| NATHANIEL R. L., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 20-cv-00375-SH |
| ) | |
| KILOLO KIJAKAZI,[1] Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Nathaniel R. L. seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") denying his claim for disability benefits under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-1383f. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. (ECF Nos. 6 & 7.) For reasons explained below, the Court reverses the Commissioner's decision denying benefits.

**I.     Disability Determination and Standard of Review**

Under the Act, an individual is disabled if he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The impairment(s) must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage

---

[1] Effective July 9, 2021, pursuant to Fed. R. Civ. P. 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 1382c(a)(3)(B).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 416.920. The Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. pt. 404, subpt. P, app. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do his past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 416.920(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 416.960(c)(2). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The

Court will "meticulously examine the [administrative] record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.  Background and Procedural History

Plaintiff applied for Title XVI disability benefits on June 30, 2018, with a protective filing date of June 27, 2018. (R. 15, 133-41.) In his application, Plaintiff alleged he has been unable to work since January 1, 2018, due to conditions including autism and attention deficit hyperactivity disorder ("ADHD"). (R. 133, 155.) Plaintiff was 20 years old at the time of the ALJ's decision. (R. 25, 133.) Plaintiff has a high school education and no past relevant work. (R. 24, 35-38, 156.)

Plaintiff's claim for benefits was denied initially and upon reconsideration. (R. 71-73, 81-85.) Plaintiff then requested and received a hearing before an administrative law judge ("ALJ"). (R. 31-44, 86-88.) The ALJ issued a decision denying benefits and finding Plaintiff not disabled. (R. 15-25.) The Appeals Council denied review on June 2, 2020 (R. 1-5), rendering the Commissioner's decision final. 20 C.F.R. § 416.1481. Plaintiff timely filed this appeal on July 30, 2020 (ECF No. 2), within 65 days of that order. *See* 20 C.F.R. § 422.210(c).

## III.  The ALJ's Decision

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the application date. (R. 17.) At step two, the ALJ found Plaintiff had the

severe impairments of (1) ADHD and (2) autism. (*Id.*) At step three, the ALJ found Plaintiff's impairments had not met or equaled a listed impairment. (R. 17-18.)

After evaluating the objective and opinion evidence, as well as Plaintiff's testimony, the ALJ concluded that Plaintiff had the RFC to perform "a full range of work at all exertional levels," with the following additional limitations: "The claimant can perform simple, routine, repetitive tasks and can have occasional interaction with supervisors and coworkers but should not be required to work with the public." (R. 19.) The ALJ then provided a recitation of the evidence that went into this finding. (R. 19-24.)

At step four, the ALJ found Plaintiff had no past relevant work. (R. 24.) Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other work that existed in significant numbers in the national economy, such as Laundry Worker I, Dishwasher, and Store Laborer. (R. 24-25.) Accordingly, the ALJ concluded Plaintiff was not disabled. (R. 25.)

## IV. Issues

Plaintiff raises three allegations of error in his challenge to the denial of benefits: (1) the RFC was unsupported, because the ALJ improperly cherry-picked evidence from the record; (2) the ALJ's evaluation of the intensity, persistence, and limiting effects of Plaintiff's subjective complaints was improper; and (3) the ALJ's evaluation of medical opinions was incomplete under 20 C.F.R. § 416.920c and unsupported by record evidence. (ECF No. 21 at 6-15.) While the undersigned is unpersuaded by Plaintiff's first two contentions, it cannot square the ALJ's analysis of medical opinions with the guidelines set forth in 20 C.F.R. § 416.920c. As such, the Court reverses the decision for further proceedings.

**V.     Analysis**

    **A.     The ALJ Properly Considered the Record as a Whole.**

First, Plaintiff contends the ALJ's findings were based on a "limited view of the record," maintaining the ALJ misconstrued Plaintiff's impairments and engaged in a selective reading of the evidence. (*Id.* at 8-9.) This argument is unpersuasive.

Regarding an ALJ's duty to review and evaluate the record, courts have consistently held that "[t]he record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Instead, the ALJ "is required to discuss the uncontroverted evidence not relied upon and significantly probative evidence that is rejected." *Frantz v. Astrue*, 509 F.3d 1299, 1303 (10th Cir. 2007). Plaintiff asserts the ALJ adopted a selective view of the record when he found Plaintiff to exhibit concentration and language capabilities within normal limits. (ECF No. 21 at 8.) The Court disagrees.

First, the Court rejects Plaintiff's contention that the ALJ "overlooked" evidence of Plaintiff's speech that would have justified a more restrictive RFC limitation. (*Id.*) The ALJ sufficiently considered Plaintiff's speech difficulties and did not cherry-pick. Instead, the ALJ considered Plaintiff's testimony regarding his "problems finding the right words to use" (R. 19); his report that he "occasionally had trouble talking" and getting words out (R. 20 (citing R. 184-91));[2] a notation from his Individualized Education Program ("IEP") that Plaintiff "possessed an extensive vocabulary and was very articulate when speaking" (*id.* (citing R. 238)); and medical examination notes demonstrating that, at times, Plaintiff's speech and language were within normal limits (R. 21 (citing R. 351)).

---

[2] This report was completed by Plaintiff's father on his behalf. (R. 191.)

5

Moreover, the ALJ considered the record medical opinions, which found, for instance, that Plaintiff's ability to interact appropriately with the public and to ask simple questions or request assistance was markedly limited. (R. 23 (citing R. 375-77).)

Plaintiff, however, maintains the ALJ overlooked evidence regarding his speech and language limitations. (ECF No. 21 at 8). The undersigned is unconvinced. While the ALJ did not reference the exact notations Plaintiff cites, he referred to the exhibit the notations were contained in numerous times throughout his decision. (R. 20, 23.)

More importantly, many of these records explicitly indicate Plaintiff's speech and language abilities fell within normal limits. (R. 276, 288.) This is exactly what the ALJ found—that Plaintiff's speech, at times, presented within normal limits. (R. 23-24.) Thus, the undersigned is not persuaded the ALJ overlooked substantial, relevant evidence regarding Plaintiff's speech and language capabilities. Additionally, the ALJ accounted for any issues that Plaintiff's speech difficulties might have caused when he limited Plaintiff to "simple, routine, repetitive tasks," only "occasional interaction with supervisors and coworkers," and no interaction "with the public." (R. 19.)

Second, Plaintiff argues the ALJ's discussion of his struggles with concentration and attention relied on "one treatment note," which Plaintiff contends is contradicted by other record evidence. (ECF No. 21 at 8.) The undersigned, however, is not persuaded that the ALJ ignored the evidence Plaintiff points to, or that the ALJ rejected such evidence in his RFC evaluation. Plaintiff specifically references treatment notes from the Ozark Center (Exhibits 2F and 5F in the Administrative Transcript) as demonstrating he had significantly more problems with his attention and concentration than the ALJ allowed for in the RFC. (*Id.* (citing R. 267, 273, 276, 285, 288, 291, 354).) Again, the ALJ referenced these exhibits numerous times throughout his decision (R. 18, 20-21, 23-24),

6

showing he was at the very least aware of them and that he did not omit them from his review of the record. Moreover, the RFC accounted for Plaintiff's limitations in his ability to concentrate and maintain attention. (R. 19.) The RFC limited Plaintiff to "simple, routine, repetitive tasks," only "occasional interaction with supervisors and coworkers, and no "work with the public." (*Id.*) Plaintiff fails to explain how such an RFC insufficiently accommodated his difficulties focusing. *See Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016) (recognizing that an RFC limiting plaintiff to only "simple, repetitive, and routine tasks" could account for moderate mental limitations in concentration and other areas). Instead, Plaintiff essentially asks the Court to review evidence already considered by the ALJ and find that he should have weighed it differently. This is not the Court's role. *See Bowman*, 511 F.3d at 1272.

### B.   The ALJ Properly Evaluated Plaintiff's Symptoms.

Second, Plaintiff argues the ALJ's evaluation of his subjective symptoms was incomplete and unsupported by substantial evidence. (ECF No. 21 at 9-10 (citing Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029 (Mar. 16, 2016)).) Plaintiff maintains the ALJ failed to give "specific reasons" for discounting a number of his subjective symptoms and that the limited reasons the ALJ provided were inconsistent with the record. (*Id.*)

When evaluating a claimant's symptoms and subjective complaints, the ALJ uses a two-step process.[3] *See* SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017); *see also* 20 C.F.R. § 416.929 (regulation governing the evaluation of symptoms). First, the medical

---

[3] Tenth Circuit precedent has characterized this as a three-step process, citing *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012). The two-step analysis under SSR 16-3p comports with this prior, three-step process under *Luna*. *Paulek v. Colvin*, 662 F. App'x 588, 593-94 (10th Cir. 2016) (unpublished). The term "credibility," however is no longer used. SSR 16-3p at *2.

7

signs or laboratory findings must show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the symptoms alleged. SSR 16-3p, at *3. Second, once such an impairment is established, the ALJ must evaluate the intensity and persistence of the symptoms, so he can determine how the symptoms limit the claimant's capacity to work. *Id.* at *4.

Factors the ALJ should consider as part of the symptom evaluation include: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of medications; (v) treatment aside from medication; (vi) any other measures the claimant has used to relieve the symptoms; and (vii) any other factors concerning functional limitations and restrictions due to the symptoms. *Id.* at *7-8. The ALJ's findings regarding symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). However, a "formalistic factor-by-factor recitation of the evidence" is not required "[s]o long as the ALJ sets forth the specific evidence he relies on in evaluating" the symptoms.[4] *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). Because subjective symptom findings are "peculiarly the province of the finder of fact," reviewing courts

---

[4] This is not to say that an ALJ may simply make "a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'" SSR 16-3p, at *10. Rather, the decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*

8

should "not upset such determinations when supported by substantial evidence." *Cowan*, 552 F.3d at 1190 (quoting *Kepler*, 683 F.3d at 391).

Here, the ALJ's decision adequately accounted for Plaintiff's symptoms. He determined, first, that Plaintiff's "medically determinable impairments could reasonably be expected to cause [his] alleged symptoms . . . ." (R. 19-21 (relying on statements made by Plaintiff at the September 2019 hearing, his father's *Third-Party Function Report*, his high school transcript and IEP, and treatment notes from the Ozark Center and Prime Care Family Medicine).)

Next, the ALJ considered whether Plaintiff's subjective statements regarding his mental limitations, when evaluated alongside all other objective evidence, led to the conclusion that Plaintiff was disabled. Though he ultimately found that "claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" (R. 21), he sufficiently considered Plaintiff's subjective complaints. In accordance with 20 C.F.R. § 416.929(c)(3), the ALJ weighed factors such as Plaintiff's daily activities (R. 19-22); the location, duration, frequency, and intensity of Plaintiff's symptoms (*id.*); precipitating and aggravating factors (R. 19); the type, dosage, and effectiveness of the medication Plaintiff took to alleviate his symptoms (R. 19-20); and the treatment he received, outside of medication, for symptom relief (R. 19-21). Only in consideration of this evidence did the ALJ find that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not wholly consistent with the record. This was an adequate evaluation under 20 C.F.R. § 416.929.

The Court also is unpersuaded by Plaintiff's allegation that the ALJ failed to give specific reasons for finding his statements not fully supported. The ALJ did not rely on

9

"a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent." SSR 16-3p, at *10. Rather, after finding Plaintiff's statements not wholly consistent with the record, the ALJ gave specific examples of instances in which he viewed the record as contradicting Plaintiff's claims about his ability to organize words and remember. (R. 21 (citing, for instance, notations in Plaintiff's IEP regarding his extensive vocabulary and articulate speaking as well as treatment notes from the Ozark Center regarding Plaintiff's memory).) Plaintiff argues this analysis is insufficient, because it did not incorporate an assessment of his struggles with attention, concentration, and maintaining pace, and because the examples the ALJ gave to contradict the symptoms were unsupported by the record as a whole. (ECF No. 21 at 9-10.) The Court disagrees. Not only did the ALJ's assessment exceed the prohibited boilerplate analysis, but it ultimately included the limitations Plaintiff now complains were discounted in the final RFC. (R. 19.)

As discussed *supra*, the ALJ reasonably accounted for Plaintiff's concentration and attention impairments by limiting him to simple, routine, and repetitive work with restricted interaction with coworkers, supervisors, and the public. (*Id.*) The undersigned also finds that the RFC was sufficient to account for any issues Plaintiff may have had maintaining pace. *See White v. Colvin*, No. 15-CV-0027-CVE-FHM, 2016 WL 1175492, at *5 (N.D. Okla. Mar. 23, 2016) (finding limitations in pace may be articulated through, for example, a limitation to understanding, remembering, and carrying out simple instructions); *Richards v. Colvin*, 640 F. App'x 786, 790 (10th Cir. 2016) (upholding the RFC where plaintiff failed to explain how the "RFC's limitations regarding simple instructions and simple work-related decisions do not adequately address her problems

with . . . pace.").[5] Thus, the ALJ was not required to provide specific reasons for rejecting Plaintiff's statements about his troubles concentrating or maintaining focus, because the ALJ did not reject them—he incorporated them into the RFC.

Finally, Plaintiff has failed to convince the Court that the ALJ's reasoning was "inconsistent with the record [and] . . . unsupported." (ECF No. 21 at 9.) To support this contention, Plaintiff relies on the same evidence regarding his tendency to speak slowly and to carefully choose his words as he did when arguing the ALJ engaged in impermissible picking and choosing from the record. (*Id.* at 9-10.) These notations were assessed *supra*, and they do not demonstrate the glaring impairment Plaintiff argues. Similarly, Plaintiff's citation to one of his former teacher's reports that "he would blurt out in class inappropriate remarks" is relatively inconsequential, as the notation is from 2013, when Plaintiff was in eighth grade (R. 337), and the ALJ's decision demonstrated he considered this evidence (R. 20).  In the end, it is not this Court's job to review the evidence and determine how the Court would decide the issue of Plaintiff's RFC or disability.  Rather, after determining whether the ALJ followed the precepts of applicable law, the only question is whether there is substantial evidence that would support the decision the ALJ made.  The ALJ's discussion of Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms complied with the law: there was much more than a scintilla of evidence supporting his conclusions and, as such, there was no error in this portion of the ALJ's decision.

---

[5] Unpublished decisions are not precedential, but they may be cited for their persuasive value.  10th Cir. R. 32.1(A).

### C. The ALJ Consideration of Medical Opinions was Inadequate.

Lastly, Plaintiff argues the ALJ's assessment of the opinions of Drs. Craig Pendergrass and Jordan Stanton and his evaluation of the prior administrative medical findings were incomplete under 20 C.F.R. § 416.920c and inconsistent with the record. (ECF No. 21 at 10-15.) The undersigned agrees the ALJ erred in articulating his consideration of Dr. Pendergrass's opinion and does not address the ALJ's consideration of other medical opinions or administrative findings.

#### 1. The Opinion of Dr. Craig Pendergrass

On April 8, 2019, Dr. Craig Pendergrass completed a *Medical Source Statement* regarding Plaintiff's mental impairments. (R. 363-65.) In it, he diagnosed Plaintiff with "attention deficit" and low-functioning IQ. (R. 363.) He then opined that Plaintiff would be "off task" 25% or more of the time from symptoms that interfered with the attention needed to perform even simple tasks. (*Id.*) Dr. Pendergrass also opined that Plaintiff had numerous marked and extreme mental limitations, which he believed would render Plaintiff incapable of ever living independently.[6] (R. 363-65.) In support of these

---

[6] Dr. Pendergrass found Plaintiff is <u>markedly</u> limited in the abilities to (1) remember locations and work-like procedures, (2) work in coordination with or proximity to others without being distracted by them, (3) accept instructions and respond appropriately to criticism from supervisors, and (4) be aware of normal hazards and take appropriate precautions. (R. 363-64.) Dr. Pendergrass found Plaintiff is <u>extremely</u> limited in his abilities (1) to understand and remember detailed instructions, (2) carry out detailed instructions, (3) maintain attention and concentration for extended periods, (4) sustain an ordinary routine without special supervision, (5) make simple work-related decisions, (6) complete a normal workday and workweek without interruption from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, (7) respond appropriately to changes in work setting, (8) travel in unfamiliar places or use public transportation, and (9) set realistic goals or make plans independent of others. (*Id.*)

limitations, Dr. Pendergrass attached a handwritten page of explanation to the *Medical Source Statement*.[7] (R. 365.)

## 2. Standard for Evaluating Medical Opinions

For adult claimants, a "medical opinion" is a statement from a medical source about what the claimant can still do despite his impairments and about whether he has one or more impairment-related limitations in both his ability to perform physical, mental, and other demands of work activities and to adapt to environmental conditions. 20 C.F.R. § 416.913(a)(2). An ALJ evaluates the persuasiveness of all medical opinions in the record by considering the following factors: (1) the opinion's supportability; (2) its consistency; (3) the medical source's relationship with the claimant;[8] (4) the medical source's specialization; and (5) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 416.920c(c). Supportability and consistency are the most important factors, and the ALJ <u>must</u> explain how <u>both</u> factors were considered. *See id.* § 416.920c(b)(2). The ALJ is not required to explain how other factors were considered absent two or more differing medical opinions about the same issue that are equally well-supported and consistent with the record. *Id.* § 416.920c(b)(2)-(3).

The two required articulation factors each have a different focus—one internal and one external. For supportability, the ALJ considers the relevancy of the objective medical evidence and the supporting explanations presented by the medical source to justify their

---

[7] Dr. Pendergrass explained that Plaintiff was not interested in driving despite being 20 years old; was "pushed" through school according to his parents; and had C-F grades, a low-functioning IQ, poor insight and judgment, and no desire to live independently. (R. 365.) Dr. Pendergrass stated, "I do not believe he is capable of living independently, ever." (*Id.*) Further, he noted that Plaintiff "has worked at 1 fast food restaurant for 2 months and was fired because he could not follow simple instructions." (*Id.*)

[8] This includes the length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship. *Id.* § 416.920c(c)(3).

13

opinion. *See Id.* § 416.920c(c)(1). Meanwhile, consistency involves a consideration of how consistent a medical opinion is with the other record evidence. *Id.* § 416.920c(c)(2).

### 3. The Parties' Arguments

Plaintiff argues the ALJ "wholly failed to consider the supportability of [Dr. Pendergrass's] opinion" as required by law. (ECF No. 21 at 11.) The Commissioner, meanwhile, maintains, "the ALJ discussed both the objective medical evidence and other evidence in the record in finding" the opinion not persuasive and that "[n]othing further was required." (ECF No. 26 at 10.) As the Court—even under a generous reading of the ALJ's decision—cannot tell whether he considered the supportability of Dr. Pendergrass's opinion, it finds Plaintiff's argument persuasive.

### 4. The ALJ's Consideration of Supportability

The ALJ's decision only briefly touched on the persuasiveness of Dr. Pendergrass's opinion. First, the ALJ summarized the *Medical Source Statement*. (R. 22.) Then, the ALJ made the following finding:

> Dr. Pendergrass' opinion is partially persuasive because the evidence of record is inconsistent with the extreme and marked limitations given that the claimant independently looked for a job and had no problem with personal care or performing household chores, with little guidance.

(*Id.*) Here, the ALJ hit on the required "consistency" factor—looking at how consistent the opinion was "with the evidence from other medical sources and nonmedical sources in the claim . . . ." 20 C.F.R. § 416.920c(c)(2).

The ALJ, however, failed to meet the minimal requirement to explain how he considered the supportability factor as to Dr. Pendergrass. The ALJ neither mentioned supportability (R. 22), nor summarized or evaluated the statements Dr. Pendergrass offered in support of his opinions (*see supra* n.7 (citing R. 365)). Had the ALJ at least <u>said</u> he considered supportability, the undersigned might not be forced to scour the

decision for an indication that he followed the precepts of 20 C.F.R. § 416.920c(b) and considered "the objective medical evidence and supporting explanations presented by" Dr. Pendergrass.

To countenance the Commissioner's position regarding the ALJ's analysis, the Court first must take the ALJ's statement regarding the "evidence of record" out of context and grammatically divorce it from its dependent clause (which refers solely to information <u>not</u> offered by Dr. Pendergrass). Treating this as an "explanation" of the ALJ's consideration of supportability, the Court must then review the ALJ's decision for the "evidence of record" he in fact considered. Did the ALJ consider the objective medical evidence and supporting explanations presented by Dr. Pendergrass? The Court cannot say he did. As noted above, the ALJ did not mention or discuss the "supporting explanations" offered by Dr. Pendergrass in the *Medical Source Statement*. As for Dr. Pendergrass's other records, the ALJ's decision contains a single reference to one note from September 24, 2018, which "revealed the claimant was negative for anxiety, depression and sleep disturbance." (R. 20 (citing R. 312).) Nowhere else in the decision did the ALJ discuss Dr. Pendergrass's records, much less those relating to his proffered opinion. This is problematic for two reasons.

First, the note referenced is not explicitly a treatment record from Dr. Pendergrass. The provider listed on Plaintiff's September 2018 visit was Carol Monroe, N.P. (R. 312.) Dr. Pendergrass was simply listed as the supervising physician. (*Id.*) Ms. Monroe, not Dr. Pendergrass, signed the treatment record. (*Id.*) Second, of the three instances in the administrative record where Dr. Pendergrass <u>is</u> listed as the medical provider (R. 315-18, 368-69), none are mentioned in the ALJ's decision. These records (from visits in 2013, 2017, and 2019) document Plaintiff's difficulties with "inattentive[ness] at school" (R. 315,

15

317) and could be viewed as corroborating statements Dr. Pendergrass offered in support of his opinions (*compare* R. 368 *with* R. 365). Yet, they are nowhere to be found in the ALJ's decision. As such, it remains unclear to the Court whether the ALJ considered any records Dr. Pendergrass used to support his opinions. Had the ALJ done so, he may have found that Dr. Pendergrass's opinions were not completely supported and, therefore, only partially persuasive. And, the Court would have upheld this finding if it was articulated and supported by the minimal standard of "substantial evidence." That did not occur here.

What is more, the Court cannot find this omission to be harmless. It cannot say that despite the error, the evidence before the ALJ was not altered, or that based on the evidence the ALJ at least <u>considered</u>, just not properly, no other reasonable factfinder could have resolved the matter differently. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). Reversal is the only option left to the Court in this case.

## VI.  Conclusion

The ALJ's decision finding Plaintiff not disabled is **REVERSED and REMANDED** for proceedings consistent with this Opinion and Order.

**SO ORDERED** this 24th day of February, 2022.

**SUSAN E. HUNTSMAN, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**